IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

CHESTER NOEL ABING, DENNIS DUANE DESHAW, and SUSAN KAY BROER-DESHAW,

                Plaintiffs,

      vs.

JAMES F. EVERS, JOHN N. TOKUNAGA, STEPHEN H. LEVINS, LISA P. TONG, MELINDA D. SANCHES, CATHERINE AWAKUNI COLON, JO ANN UCHIDA TAKEUCHI, MICHAEL J.S. MORIYAMA, BRUCE B. KIM, BRADLEY R. TAMM, RYAN SUMMERS LITTLE, REBECCA SALWIN, YVONNE R. SHINMURA, CHARLENE M. NORRIS, ROY F. HUGHES, GAYLE J. LAU, JEFFREY P. MILLER, PHILIP H. LOWENTHAL, CLIFFORD NAKEA, BERT I. AYAB, and JEANNTTE H. CASTAGNETTI,

                Defendants.

CIVIL NO. 21-00095 JAO-WRP

**ORDER GRANTING IN PART AND DENYING IN PART (1) MOTION TO DISMISS PLAINTIFFS' COMPLAINT FILED ON FEBRUARY 16, 2021 [ECF NO. 14]; AND (2) DEFENDANTS BRUCE B. KIM, BRADLEY R. TAMM, RYAN SUMMERS LITTLE, REBECCA SALWIN, YVONNE R. SHINMURA, CHARLENE M. NORRIS, ROY F. HUGHES, GAYLE J. LAU, JEFFREY P. MILLER, PHILIP H. LOWENTHAL, CLIFFORD NAKEA, THE HONORABLE BERT I. AYABE AND THE HONORABLE JEANNETTE H. CASTAGNETTI'S SUBSTANTIVE JOINDER AND MOTION TO DISMISS WITH PREJUDICE COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES [ECF NO. 46]**

**ORDER GRANTING IN PART AND DENYING IN PART (1) MOTION TO DISMISS PLAINTIFFS' COMPLAINT FILED ON FEBRUARY 16, 2021 [ECF NO. 14]; AND (2) DEFENDANTS BRUCE B. KIM, BRADLEY R. TAMM, RYAN SUMMERS LITTLE, REBECCA SALWIN, YVONNE R. SHINMURA, CHARLENE M. NORRIS, ROY F. HUGHES, GAYLE J. LAU, JEFFREY P. MILLER, PHILIP H. LOWENTHAL, CLIFFORD NAKEA, THE HONORABLE BERT I. AYABE AND THE HONORABLE JEANNETTE H. CASTAGNETTI'S SUBSTANTIVE JOINDER AND MOTION TO DISMISS WITH PREJUDICE COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES [ECF NO. 46]**

Pro se Plaintiffs Chester Noel Abing ("Abing"), Dennis Duane DeShaw ("DeShaw"), and Susan Kay Broer-DeShaw ("Broer-DeShaw") (collectively, "Plaintiffs") are each homeowners who have faced or are facing foreclosure in state court proceedings.  Plaintiffs filed a Verified Class-Action Complaint ("Complaint"), ECF No. 1, against various individuals affiliated with Hawaii's Office of Consumer Protection ("OCP") and Office of Disciplinary Counsel ("ODC") and two state court judges, all of whom allegedly engaged in a far-ranging conspiracy to unlawfully deprive various homeowners in Hawaiʻi of their homes.

Defendants James F. Evers, John N. Tokunaga, Stephen H. Levins, Lisa P. Tong, Melina D. Sanchez,[1] Catherine Awakuni Colón,[2] Jo Ann M. Uchida

---

[1]  Plaintiffs refer to Sanchez as Melinda D. Sanches in the caption of the Complaint.

[2]  Plaintiffs omit the diacritical mark in the Complaint.

Takeuchi, and Michael J.S. Moriyama (collectively, the "OCP Defendants")[3] move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and failure to state a claim.  ECF No. 14 ("Motion").  Defendants Bruce B. Kim, Bradley R. Tamm, Ryan Summers Little, Rebecca Salwin, Yvonne R. Shinmura, Charlene M. Norris, Roy F. Hughes, Gayle J. Lau, Jeffrey P. Miller, Philip H. Lowenthal, and Clifford Nakea (collectively, the "Disciplinary Defendants");[4] and the Honorable Bert I. Ayabe[5] and the Honorable Jeannette H. Castagnetti[6] (collectively, the "Judge Defendants") substantively join in the OCP Defendants' Motion and seek dismissal on additional grounds.  ECF No. 46 ("Substantive Joinder and Motion to Dismiss" or "Substantive Joinder").  The Court elects to decide this matter without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the U.S.

---

[3]  Plaintiffs identify OCP Defendants James F. Evers, John N. Tokunaga, Stephen H. Levins, Lisa P. Tong, and Melina D. Sanchez as the "OCP Lawyers," ECF No. 1 ¶ 23(a), and OCP Defendants Catherine Awakuni Colón, Jo Ann Uchida Takeuchi, and Michael J.S. Moriyama, as the "Supervisors of the OCP Lawyers." *Id.* ¶ 23(b).

[4]  Plaintiffs identify Disciplinary Defendants  Bruce B. Kim, Bradley R. Tamm, Ryan Summers Little, Rebecca Salwin, Yvonne R. Shinmura, and Charlene M. Norris as the "ODC Lawyers,"  ECF No. 1 ¶ 23(c), and Disciplinary Defendants Roy F. Hughes, Gayle J. Lau, Jeffrey P. Miller, Philip H. Lowenthal, and Clifford Nakea as the "Disciplinary Board Lawyers."  *Id.* ¶ 23(d).

[5]  Plaintiffs refer to Judge Ayabe as "Bert I. Ayab" in the caption of the Complaint.

[6]  Plaintiffs refer to Judge Castagnetti as "Jeanntte H. Castagnetti" in the caption of the Complaint.

District Court for the District of Hawaii.  For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART the OCP Defendants' Motion and the Disciplinary Defendants and Judge Defendants' Substantive Joinder and Motion to Dismiss.

## I.     BACKGROUND

### A.     Facts[7]

Plaintiffs are each homeowners whose homes are or have been subject to foreclosure by "Dummy Corporations" that allegedly pretended (1) to lend money to homeowners and (2) to own their mortgages, when they had no legal interest in the mortgaged properties.  ECF No. 1 ¶ 1.  Plaintiffs have been involved in seven separate lawsuits against the Dummy Corporations that have initiated foreclosure proceedings against them.  *Id.* ¶ 31.  Plaintiffs allege that the Judge Defendants wrongfully granted summary judgment to the respective mortgagees in foreclosure cases involving Plaintiffs' respective homes, and that they routinely grant summary judgment in favor of mortgagees without evidence that the mortgagee owns the mortgage and associated note.  *Id.* ¶¶ 1–3.

---

[7]  The Court's recitation of facts is based on the allegations in the Complaint, which are taken as true for purposes of the OCP Defendants' Motion and the Disciplinary Defendants and Judge Defendants' Substantive Joinder and Motion to Dismiss.

According to Plaintiffs, wrongful foreclosures occur because there are no longer any attorneys in Hawaiʻi who are willing and competent to represent defendants in foreclosure actions in a zealous manner. *Id.* ¶ 5. The various government officials named in the Complaint (whom Plaintiffs believe are former employees of and/or attorneys for the Dummy Corporations and reference in the Complaint as the "Conspirators" and to whom the Court will refer as "Defendants") have allegedly entered into a "confederacy . . . to assist the Dummy Corporations in taking thousands of homes in this State." *Id.* Defendants intimidate members of the foreclosure defense bar by disbarring its members for minor or trumped-up offenses, threatening to disbar them, subpoenaing their records, offering to bribe their former clients to complain about them, and suing them under consumer protection laws. *Id.*

Plaintiffs further allege that Defendants have acted together to "blacklist" and discriminate against homeowners like Plaintiffs who defend against foreclosure proceedings by intervening in foreclosure cases without leave of court, threatening and intimidating homeowners, harassing them by subpoenaing their records, assisting the mortgagees' attorneys, and stealing funds from one of the Plaintiffs' bank accounts. *Id.* ¶ 8.

On January 24, 2013, the ODC Lawyers and OCP Lawyers allegedly approached attorney Sandra D. Lynch, then an associate at a foreclosure defense

law firm, and ordered her to "steal" 27 of the firm's clients and then stop working zealously on those clients' cases.  *Id.* ¶ 35.  As a result, most of those 27 clients lost their homes to the Dummy Corporations, and the law firm dissolved.  *Id.*  Abing and DeShaw were clients of that law firm and therefore were harmed by this sequence of events.  *Id.*  Plaintiffs maintain that the Supervisors of the OCP Lawyers either authorized the theft of clients from Lynch's law firm and the subsequent break-up of the firm, or negligently failed to supervise the OCP Lawyers.  *Id.* ¶ 36.

On December 3, 2014, the ODC Lawyers filed a complaint against attorney Robert L. Stone ("Stone") that Plaintiffs describe as "malicious and selective" for the purpose for forcing Stone to resign from the State bar, thereby depriving Plaintiffs of their choice of counsel and harming them in their efforts to defend against foreclosure actions.  *Id.* ¶ 40.

The OCP Lawyers and ODC Lawyers allegedly threatened attorney R. Steven Geshell, which caused Geshell to turn on his clients and file unauthorized and inferior pleadings in foreclosure cases, including pleadings that defied Plaintiffs' clear instructions.  *Id.* ¶ 42.  The Supervisors of the OCP Lawyers authorized the OCP Lawyers' conduct or negligently failed to supervise the OCP Lawyers.  *Id.* ¶ 43.

6

On August 30, 2018, the OCP Lawyers intervened without leave of court in a state court foreclosure proceeding to which Abing was a party.  *Id.* ¶ 30.  The OCP Lawyers subpoenaed Abing and his attorney, Keoni Agard, and questioned them both.  *Id.*  Plaintiffs alleged the OCP Lawyers threatened to prosecute Abing for an unspecified felony, bullied him, attempted to bribe him "with a (fake) offer of $10,000," and ordered him to "discharge his attorney's paralegal assistant"[8] and stop defending against the foreclosure action.  *Id.*  Plaintiffs maintain that the OCP Lawyers did this to trick Abing into making false statements that could be used against him in the foreclosure action.  *Id.*

Plaintiffs assert that on December 10, 2018, the OCP Lawyers and ODC Lawyers threatened attorney Jason B. McFarlin, who had accepted Plaintiffs as clients, but, pursuant to instructions from Defendants, failed to represent them vigorously.  *Id.* ¶ 44.  The Supervisors of the OCP Lawyers either authorized the OCP Lawyers' actions or negligently failed to supervise them properly.  *Id.* ¶ 45.

On December 13, 2018, the ODC Lawyers conducted a hearing before the Disciplinary Board regarding a complaint against attorney Gary V. Dubin ("Dubin"), which complaint Plaintiffs allege contained trivial and false

---

[8]  Although not alleged in the Complaint, this "paralegal assistant" appears to be Stone based on Plaintiffs' use of this exact term to refer to Stone in their other filings.  *See generally* ECF Nos. 58–60.  This observation does not affect the Court's ruling herein.

accusations.  *Id.* ¶ 37.  Plaintiffs allege that the purpose of the complaint was to disbar Dubin to suppress the foreclosure defense bar, thereby depriving Plaintiffs of their choice of counsel and harming them in their efforts to defend against foreclosure actions.  *Id.*  On February 13, 2019, the Disciplinary Board Lawyers disbarred Dubin.  *Id.* ¶ 38.

Plaintiffs contend that on February 8, 2019, the OCP Lawyers again intervened in Abing's state court case by stealing $800 from his credit card account to prevent Abing from using that sum to pay his legal fees, and then stole an additional $500 on March 23, 2019.  *Id.* ¶¶ 32–33.  Plaintiffs assert that the Supervisors of the OCP Lawyers either authorized the OCP Lawyers' conduct or negligently failed to supervise the OCP Lawyers.  *Id.* ¶ 34.

Plaintiffs allege that on October 28, 2020 the OCP Defendants sent letters to Plaintiffs offering to pay large bribes to them if they would inform and file a false complaint against "their paralegal assistant" so the OCP Lawyers could show the false complaints to other Defendants in state court.  *Id.* ¶ 47.  Plaintiffs contend that the purpose of this scheme was to have the paralegal removed from Plaintiffs' foreclosure cases and thereby block Plaintiffs from filing appeals to the Hawai'i Supreme Court.  *Id.*  The payment was never made.  *Id.*

Plaintiffs further assert that the Judge Defendants work closely with the other Defendants and award "huge prizes" to the Dummy Corporations without

8

requiring them to provide evidence of ownership in foreclosure cases, and that Judge Castagnetti gives foreclosure attorneys free rein to harass, trick, threaten, and investigate pro se defendants.  *Id.* ¶ 48.

Plaintiffs allege that the Dummy Corporations forge documents in order to prevail in foreclosure actions and did so in Abing and DeShaw's respective foreclosure actions.  *Id.* ¶ 58.  Plaintiffs state that Defendants, who are charged with protecting consumers, have taken no action to stop the alleged fraud the Dummy Corporations are perpetrating.  *Id.* ¶ 59.

## B.   Procedural History

Plaintiff commenced this action by filing the Complaint on February 16, 2021, asserting the following claims against all Defendants:

- ▪ Count I – Abuse of Power or Malfeasance

- ▪ Count II – 42 U.S.C. § 1983:  Due Process

- ▪ Count III –  42 U.S.C. § 1983:  Threatening Homeowners

- ▪ Count IV – 42 U.S.C. § 1983:  Equal Protection

- ▪ Count V – 42 U.S.C. § 1985(2) and (3):  Conspiracy to Deprive Constitutional Rights

- ▪ Count VI – 42 U.S.C. § 1983:  Denial of Access to Courts

- ▪ Count VII – 42 U.S.C. § 1983:  Failure to Intervene

- ▪ Count VIII – Malicious Prosecution

▪ Count IX – Civil Conspiracy

▪ Count X – Intentional Infliction of Emotional Distress ("IIED")

▪ Count XI – 42 U.S.C. § 1986:  Action for Neglect to Prevent a Harm.

Plaintiffs pray for declaratory relief, injunctive relief, compensatory damages, punitive damages, costs, attorneys' fees, the appointment of counsel to represent the putative class, and the appointment of a special master to supervise foreclosure actions and related activities in state court. *Id.* at 47–48.

The OCP Defendants filed a motion to dismiss on April 1, 2021.  ECF No. 14.  The Disciplinary Defendants and the Judge Defendants filed a substantive joinder in the OCP Defendants' Motion on April 19, 2021, and also sought dismissal on additional grounds.  ECF No. 46.  Plaintiff filed his opposition to both the Motion and the Substantive Joinder on May 7, 2021.  ECF No. 49.  The OCP Defendants, and the Disciplinary Defendants and Judge Defendants, filed their respective reply memoranda on May 14, 2021.  ECF Nos. 50, 51.  Pursuant to the Court's entering order dated June 18, 2021, ECF No. 57, the parties filed supplemental memoranda regarding claim preclusion and issue preclusion.  ECF Nos. 62–64.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Parties may challenge a court's subject matter jurisdiction under Federal

Rule of Civil Procedure ("FRCP") 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A jurisdictional challenge may either be "facial" or "factual." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

A facial attack challenges the sufficiency of the allegations contained in a complaint to invoke federal jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). District courts may review evidence beyond the complaint in resolving a factual attack on jurisdiction without converting a motion to dismiss into a motion for summary judgment. *See id.* (citation omitted). In such instances, courts "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted); *see Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) ("A factual challenge 'relies on affidavits or any other evidence properly before the court' to contest the truth of the complaint's allegations." (brackets and citations omitted)). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe*

11

*Air*, 373 F.3d at 1039 (internal quotation marks and citation omitted).

**B.      Rule 12(b)(6)**

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads

12

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations in original). If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

//

//

//

//

//

//

//

//

13

# III.   DISCUSSION[9]

For the reasons detailed below, the Court GRANTS IN PART AND DENIES IN PART the OCP Defendants' Motion and the Disciplinary Defendants and Judge Defendants' Substantive Joinder and Motion to Dismiss.  The Court concludes that:  (1) the Eleventh Amendment bars the federal claims (Counts II through VII and XI) insofar as those claims seek money damages; (2) the State Tort Liability Act prevents Plaintiffs from asserting state law claims against

---

[9]  Both the OCP Defendants and the Disciplinary Defendants and Judge Defendants attached extrinsic evidence to their respective motions, and, in the case of the OCP Defendants, their reply.  *See generally* ECF Nos. 14, 46, and 50. While the general rule is that a court may not consider extrinsic evidence in evaluating a motion to dismiss, "[a] court *may*, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted) (emphasis added).  The Court may take judicial notice of some public records and "adjudicative facts that are 'not subject to reasonable dispute.'" *Id.* at 908–09 (quoting Fed. R. Evid. 201(b)). Under the incorporation by reference doctrine, the Court may consider a document not attached to a complaint where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citations omitted).  "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id.* (citation omitted). The parties have neither requested judicial notice nor explained why any of the extrinsic evidence they attached are subject to the incorporation by reference doctrine.  In any event, because the Court need not rely on the extrinsic materials in order to decide the Motion and the Substantive Joinder and Motion to Dismiss, the Court declines to consider the extrinsic materials.

Defendants in their official capacities in federal court (Counts I, VIII, IX, and X); (3) the Court does not have jurisdiction over claims relating to the attorney discipline process and, in any event, Rule 2.8 of the Rules of the Supreme Court of Hawaiʻi ("RSCH") offers some immunity to the Disciplinary Defendants (Count VIII); (4) judicial immunity precludes the claims against the Judge Defendants (all Counts); (5) Plaintiffs fail to meet federal pleading standards as to the Due Process, Denial of Access to Courts, Threatening Homeowners, Equal Protection, and Failure to Intervene claims (Counts II, III, IV, VI, and VII); and (6) Defendants are entitled to qualified immunity as to the § 1985 and § 1986 claims (Counts V and XI).

## A.    Defendants' Capacities

Plaintiffs do not identify in the caption of the Complaint whether they are suing Defendants — each of whom are government officials — in their individual or official capacities.  ECF No. 1 at 1.  In their prayer for relief, however, Plaintiffs request the Court enter judgment against Defendants "both individually and in their official capacities" for various forms of money damages.  *Id.* at 48.  The OCP Defendants, joined by the Disciplinary Defendants and Judge Defendants, interpret the Complaint as against Defendants in "both their individual and official capacities," but argue that the Court should construe the Complaint as against Defendants only in their official capacities because the factual allegations in the

Complaint concern official actions rather than individual misconduct.  ECF No. 14-1 at 24–26.

In recognizing that the distinction between individual- and official-capacity suits "continues to confuse lawyers and confound lower courts," the Supreme Court has explained that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"[10]  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted).  Thus, a suit may be characterized as an official-capacity suit when it seeks "the prevention or discontinuance, in rem, of the wrong."  *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949).  Ultimately, the test for determining whether a defendant is sued in an individual or official capacity is "whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the [public entity]."  *Id.*; *see also Fodor v. L.A. Unified Sch. Dist.*, No. CV 12-08090 DMG (CWx), 2013 WL 12130260, at *5 (C.D. Cal. Mar. 1, 2013) (citing *id.*).  The Court must look to the nature of the suit, rather than how it is labeled by Plaintiffs, in order to determine

---

[10]  The Court uses the term "personal capacity" rather than "individual capacity." *See Graham*, 473 U.S. at 165.

whether the suit is an individual-capacity suit or official-capacity suit, or both.  *See Larson*, 337 U.S. at 687–88.

Plaintiffs are certainly suing Defendants in their individual capacities as Plaintiffs seek to hold them individually liable for wrongs Plaintiffs allege they committed as government officials.  *See generally* ECF No. 1.  Because Plaintiffs also ask the Court to "enjoin [Defendants] from continuing the actions alleged in [the] Complaint," *id.* at 48, and pro se pleadings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it is reasonable to conclude that Plaintiffs also sue Defendants in their official capacities, as Defendants concede.

The Court therefore construes Plaintiffs' claims as claims against Defendants in both their individual and official capacities.

## B.    Sovereign Immunity and Eleventh Amendment Immunity

The OCP Defendants[11] argue that they have immunity from suit in their official capacities under the Eleventh Amendment to the United States Constitution and under the doctrine of sovereign immunity.[12]  ECF No. 14-1 at 24–28.  The

---

[11]  Only the OCP Defendants raise this argument, which was not addressed in the Substantive Joinder by the Disciplinary Defendants or Judge Defendants. However, as indicated herein, the Court concludes that the immunity applies to all Defendants.

[12]  The OCP Defendants distinguish between Eleventh Amendment Immunity and sovereign immunity, citing the Eleventh Amendment and the State Tort Liability Act, codified at Hawaiʻi Revised Statutes ("HRS") chapter 662, as independent

(continued . . .)

17

Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment "'bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity.'"  *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005) (quoting *Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999)), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010).  The Court may find such "unequivocal consent" only if:  (1) the state expressly consents to federal jurisdiction in the context of the litigation; (2) a state statute or constitutional provision expressly provides for suit in federal court; or (3) Congress clearly

---

(. . . continued)

bases for the State's immunity from suit.  *See* ECF No. 14-1 at 24–28.  The Eleventh Amendment grants states immunity from suit, and the State Tort Liability Act serves as a limited waiver of the State's immunity from suit.  *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 873–74 & n.4 (9th Cir. 1987).  The Court further construes the OCP Defendants' argument relating to Eleventh Amendment and sovereign immunity as a jurisdictional argument, as the OCP Defendants do in their Motion, ECF No. 14-1 at 26, though the issue of whether sovereign immunity is jurisdictional is not settled law.  *Cf. Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (stating that the Supreme Court has not decided whether Eleventh Amendment immunity concerns subject matter jurisdiction); *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000) ("Though not jurisdictional in the traditional sense, whether the Tribe's claims are barred by the Eleventh Amendment presents threshold issues for our review.").

abrogates the Eleventh Amendment.  *See Charley's Taxi Radio Dispatch*, 810 F.2d at 873 (citation omitted); *see also Doe v. Maher*, 793 F.2d 1470, 1494 (9th Cir. 1986).

Insofar as a suit against a state official in his or her official capacity is equivalent to a suit against the state, *see Graham*, 473 U.S. at 165, Defendants are indeed entitled to Eleventh Amendment immunity in their official capacities only so long as the State has unequivocally consented to a waiver of its immunity.  *See Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992), *as amended* (Oct. 9, 1992) ("It is thus clear that the eleventh amendment will bar Pena from bringing his claims in federal court against the state officials in their *official* capacities.  It will not, however, bar claims against the state officials their *personal* capacities." (citing *Hafer v. Melo*, 502 U.S. 21 (1991); *DeNieva v. Reyes*, 966 F.2d 480, 483–84 (9th Cir. 1992)) (footnote omitted)).

1.    Plaintiffs' Federal Claims (Counts II through VII and XI)

The State has not waived its sovereign immunity with respect to the federal claims asserted in the Complaint.  Under the State Tort Liability Act, "The State . . . waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances[.]"  HRS § 662-2.  The State Tort Liability Act, however, contains an exception for claims "based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused." HRS § 662-15(1). The Hawai'i Supreme Court has nevertheless "f[ound] no provision in the State Tort Liability Act that expressly makes the State liable in money damages for constitutional violations." *Figueroa v. State*, 61 Haw. 369, 383, 604 P.2d 1198, 1206 (1979). Accordingly, the State has not waived its sovereign immunity with respect to the federal claims asserted in the Complaint, which include Count II (Due Process); Count III (Threatening Homeowners); Count IV (Equal Protection); Count V (Conspiracy to Deprive Constitutional Rights); Count VI (Denial of Access to Courts); Count VII (Failure to Intervene); and Count XI (Action for Neglect to Prevent a Harm).

Eleventh Amendment immunity, however, only applies to claims for retrospective relief and not prospective relief. Under *Ex parte Young*, 209 U.S. 123 (1908), a suit against a state official for prospective declaratory or injunctive relief is not considered to be a claim against the State and is instead considered a suit against a person under 42 U.S.C. § 1983. *See Wolfe*, 392 F.3d at 365 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).

The Court therefore DISMISSES WITH PREJUDICE Counts II through VII and Count XI insofar as each seeks money damages, *i.e.*, retrospective relief,

against Defendants in their official capacities, but DENIES the Motion regarding

these counts to the extent prospective relief is sought. *See* ECF No. 1 at 48.[13]

    2.    <u>Plaintiffs' State Law Claims (Counts I, VIII, IX, and X)</u>

The State Tort Liability Act requires that Plaintiffs prosecute their state law

claims against Defendants in their official capacities in state court:

> The circuit courts of the State and, except as otherwise
> provided by statute or rule, the state district courts shall have
> original jurisdiction of all tort actions on claims against the State,
> for money damages, accruing on and after July 1, 1957, for injury
> or loss of property, or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the
> State while acting within the scope of the employee's office or
> employment.

HRS § 662-3.  Courts in this District have consistently construed § 662-3 to bar

tort claims against the State in federal court. *See, e.g.*, *Sherez v. Hawai'i Dep't of*

*Educ.*, 396 F. Supp. 2d 1138, 1144 (D. Haw. 2005) ("Although Hawaii has waived

its sovereign immunity as to some state tort and statutory claims, it has done so

solely with respect to state court actions."); *Lindsey v. Matayoshi*, 950 F. Supp. 2d

1159, 1171 (D. Haw. 2013) (same); *Kruse v. Hawai'i*, 857 F. Supp. 741, 752 (D.

Haw. 1994) ("In section 662-2 of the Hawaii Revised Statutes, the State waived its

immunity for the common law torts of its employees, and in section 662-3, H.R.S.,

the State vested original jurisdiction of all tort actions against the State in the

---

[13] As explained *infra* in Sections III.C., III.F.1–2, III.G., and III.H., Counts II, III,
V, VI, and XI are also dismissed with prejudice in their entirety for other reasons.

circuit courts of the State.").  As Plaintiffs may not bring state tort claims against the State in federal court, the Court DISMISSES WITHOUT LEAVE TO AMEND Count I (Abuse of Power or Malfeasance), Count VIII (Malicious Prosecution), Count IX (Civil Conspiracy), and Count X (IIED) as to each Defendant in their official capacities.[14]

## C.    Jurisdiction over State Attorney Disciplinary Proceedings and Related Immunities

### 1.    Jurisdiction over State Attorney Disciplinary Proceedings

The Disciplinary Defendants and Judge Defendants argue that the Court lacks jurisdiction over Plaintiffs' Complaint because the Hawaiʻi Supreme Court has exclusive jurisdiction over attorney disciplinary proceedings.  ECF No. 46-1 at 21–24.  The Disciplinary Defendants and Judge Defendants maintain that Plaintiffs' allegations and claims are based in part on the Disciplinary Defendants' actions and conduct and have a direct bearing on attorney disciplinary proceedings, and, as such, the entire Complaint should be dismissed.  *Id.* at 23–24.

The Ninth Circuit has held that "orders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court."  *MacKay v. Nesbett*, 412

---

[14]  As explained *infra* in Section III.C.1, Count VIII is also dismissed with prejudice in its entirety.

F.2d 846, 846 (9th Cir. 1969) (per curiam), *cert. denied*, 396 U.S. 960 (1969); *see also Doe v. State Bar of Calif.*, 582 F.2d 25, 26 (9th Cir. 1978) ("[F]ederal courts do not have jurisdiction to interfere with disciplinary proceedings of the State Bar of California[.]" (citations omitted)) (per curiam).

The Hawaiʻi Supreme Court has further made clear that along with the Disciplinary Board, it has exclusive jurisdiction over matters involving attorney discipline in Hawaiʻi:

> Any attorney admitted to practice law in this state, any attorney specially admitted by a court of this state for a particular proceeding, and any attorney specially admitted [to] appear in an arbitration proceeding under Rule 1.9A of these Rules is subject to the exclusive disciplinary jurisdiction of the supreme court and the Board hereinafter established.

RSCH Rule 2.1.

The Court therefore concludes that it lacks jurisdiction to review disciplinary proceedings involving attorneys barred in Hawaiʻi. However, the allegations in the Complaint involve more than simply an appeal of disciplinary decisions, and so a wholesale dismissal of the Complaint is unwarranted based on the Court's lack of jurisdiction over state attorney disciplinary proceedings.

Nonetheless, the Court lacks jurisdiction over Count VIII, Plaintiffs' malicious prosecution claim. In Count VIII, Plaintiffs allege that Defendants "caused Attorneys Gary Dubin and Robert Stone (and unknown other members of the foreclosure-defense bar) to be subjected to judicial proceedings for which there

23

was insufficient probable cause." ECF No. 1 ¶ 102. Even assuming Plaintiffs had standing to assert a claim for malicious prosecution on behalf of Dubin, Stone, and other unnamed attorneys — which the Court has not yet decided — the Court could not adjudicate Plaintiffs' malicious prosecution claim without reviewing the merits of the disciplinary proceedings at issue. *See Young v. Allstate Ins. Co.*, 119 Hawaiʻi 403, 417, 198 P.3d 666, 680 ("The tort of malicious prosecution permits a plaintiff to recover when the plaintiff shows that the prior proceedings were (1) terminated in plaintiff's favor, (2) *initiated without probable cause*, and (3) initiated with malice." (emphasis added) (citations omitted)). The remainder of Plaintiffs' claims at least arguably encompass conduct beyond the disciplinary proceedings involving Dubin and Stone.

Count VIII (malicious prosecution) is therefore DISMISSED WITH PREJUDICE because the Court lacks jurisdiction to review Hawaiʻi attorney disciplinary proceedings.

### 2. RSCH Rule 2.8 Immunity

The Disciplinary Defendants also argue that they are immune from suit under two rules: (1) RSCH Rule 2.8 ("Rule 2.8") and (2) quasi-judicial immunity.

24

ECF No. 46 at 32–34.  The Court addresses only Rule 2.8 because it offers broader

immunity to the Disciplinary Defendants than quasi-judicial immunity.[15]

Rule 2.8 provides:

> *Complaints submitted to the Board*[[16]] *or Counsel or testimony given with respect thereto or trustee proceedings conducted pursuant to Rule 2.20 shall be absolutely privileged and no lawsuit predicated thereon may be instituted.*  Members of the Board, members of the hearing committees, hearing officers, Counsel, counsel to the Board, staff, volunteers, experts appointed pursuant to Rule 2.19, trustees and assistants appointed pursuant to Rules 2.20 and 2.5, and mentors appointed pursuant to Rule 2.7(b)(4) *shall be immune from suit and liability for any conduct in the course of their official duties*.

RSCH Rule 2.8 (emphases added).  The plain language of Rule 2.8 precludes

lawsuits for malicious prosecution based on alleged misconduct in the course of

the attorney disciplinary process.  *See Kamaka v. Goodsill Anderson Quinn &*

*Stifel*, 117 Hawai'i 92, 107, 176 P.3d 91, 106 (2008).  As such, Count VIII

---

[15]  Quasi-judicial immunity extends judicial immunity to "'certain others who perform functions closely associated with the judicial process.'"  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (citations omitted).  "Administrative law judges and agency prosecuting attorneys are entitled to quasi-judicial immunity so long as they perform functions similar to judges and prosecutors in a setting like that of a court."  *Hirsh v. Justs. of the Sup. Ct. of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) (per curiam) (citation omitted).

[16]  The Board referenced in Rule 2.8 is the Disciplinary Board of the Supreme Court of Hawai'i.  *See* RSCH Rule 2.4(a).

(Malicious Prosecution) is DISMISSED WITH PREJUDICE as to the Disciplinary Defendants on this ground as well.

The Court is also persuaded that Rule 2.8 provides the Disciplinary Defendants, each of whom are employees and officers specifically referenced in the rule, with immunity from suit for their behavior committed in the execution of official duties.  However, the Disciplinary Defendants are not entitled to blanket immunity from any possible claim Plaintiffs may assert because Plaintiffs have at least *arguably* alleged facts relating to conduct taken by the Disciplinary Defendants outside of their official duties.  *See, e.g.*, ECF No. 1 ¶¶ 35–36, 42–45 (alleging threats and directives given to various attorneys regarding their representation of foreclosure defendants); *id.* ¶ 46 (asserting the conspiracy alleged in the Complaint was furthered by working with the Dummy Corporations' lawyers).  The Court therefore declines at this stage to conclude that Rule 2.8 confers immunity to the Disciplinary Defendants for the other counts, which are dismissed for other reasons in any event.

3.    Judicial Immunity

The Judge Defendants argue that they are entitled to absolute immunity under the doctrine of judicial immunity.  ECF No. 46-1 at 28–32.  "[C]ommon law has long recognized judicial immunity, a 'sweeping form of immunity' for acts performed by judges that relate to the 'judicial process.'"  *In re Castillo*, 297 F.3d

940, 947 (9th Cir. 2002), *as amended* (Sept. 6, 2002) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988)) (other citation omitted); *see also Duvall*, 260 F.3d at 1133 ("It is well settled that judges are generally immune from suit for money damages." (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)).  "[A]bsolute judicial immunity does not apply to non-judicial acts, i.e.[,] the administrative, legislative, and executive functions that judges may on occasion be assigned to perform."  *Id.* (citing *Forrester*, 484 U.S. at 227).  In addition to common law, § 1983 further limits the circumstances under which judges may be subject to suit: "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983; *see also Wolfe*, 392 F.3d at 366 ("Section 1983 only contemplates judicial immunity from suit for injunctive relief for acts taken in a judicial capacity.").  Under Hawaiʻi law, judges are likewise "absolutely immune from suit for their judicial actions."  *Seibel v. Kemble*, 63 Haw. 516, 521, 631 P.2d 173, 177 (1981) (citations omitted).

Here, Plaintiffs' allegations regarding the Judge Defendants relate to their judicial conduct, namely their handling of the foreclosure docket, and not to any administrative, legislative, and executive functions that they may have performed,

nor other extrajudicial conduct.  *See generally* ECF No. 1.  And Plaintiffs have not alleged that the Judge Defendants violated any declaratory decree.

The Judge Defendants are therefore entitled to absolute judicial immunity. Because Plaintiffs' allegations against the Judge Defendants exclusively pertain to their actions within their judicial capacities, the Court DISMISSES WITH PREJUDICE all federal and state law claims against the Judge Defendants.

## D.    The *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine prevents the Court from exercising jurisdiction over the Complaint because the Complaint amounts to a de facto appeal of the Hawaiʻi Supreme Court's Order Allowing Robert Stone to Resign and because Plaintiffs' claims are inextricably intertwined with the state court decision at issue.  *See* ECF No. 46-1 at 24–28; ECF No. 14-1 at 36–37.

"Under *Rooker–Feldman*, lower federal courts are without subject matter jurisdiction to review state court decisions, and state court litigants may therefore only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the United States."  *Mothershed v. Justs. of the Sup. Ct.*, 410 F.3d 602, 606 (9th Cir. 2005) (citations omitted).  District courts are barred from exercising jurisdiction over not only direct appeals of state court decisions, "but also over the 'de facto equivalent' of such . . . appeal[s]."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (citation omitted).  Courts "pay close attention to the

*relief* sought by the federal-court plaintiff" in determining whether an action is a de facto appeal. *Id.* at 777–78 (internal quotation marks and citation omitted). A de facto appeal is found "when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Id.* at 778 (internal quotation marks and citations omitted); *see also Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (explaining that a plaintiff's claims must arise from the state court judgment, not merely "when a party fails to obtain relief in state court" (citation omitted)); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (explaining that *Rooker-Feldman* precludes adjudication of claims when the redress sought by the plaintiff is an "undoing" of the prior state court judgment).

*Rooker-Feldman*'s "applicability 'is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Mothershed*, 410 F.3d at 606 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Moreover, "[t]he *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be

considered in privity with a party to the judgment." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (footnote omitted).

Focusing on the relief sought here — including a request that the Court appoint a special master to supervise state foreclosure actions — it is clear that this case does not amount to an appeal of the Hawaiʻi Supreme Court's Order Allowing Robert Stone to Resign. Indeed, Plaintiffs were not the "state-court losers" in the attorney disciplinary proceedings involving Stone; Stone was. Plaintiffs' primary challenge is to Defendants' execution of state foreclosure proceedings, not Stone's court-permitted resignation from the bar. The Court therefore rejects Defendants' *Rooker-Feldman* arguments.

## E.    Claim Preclusion and Issue Preclusion

The Court ordered the parties to brief the issue of whether United States District Judge Derrick K. Watson's Order Granting in Part and Denying in Part Plaintiff/Counterclaim Defendant's Motion to Dismiss Counterclaim, Strike Jury Demand, and Strike Portions of the Answer in *Hawaiʻi v. Stone*, Case No. 19-cv-00272-DKW-RT (D. Haw.) ("*Stone*"), *see id.*, 2019 WL 5058910 (D. Haw. Oct. 8, 2019) ("*Stone I*"), *aff'd*, 830 F. App'x 964 (9th Cir. 2020), has preclusive effect on any of the claims in the Complaint under the doctrines of claim preclusion/res

judicata and/or issue preclusion/collateral estoppel.[17]  ECF No. 57.  In *Stone I*, which concerned an enforcement action OCP commenced against Stone, Judge Watson dismissed a twelve-count counterclaim Stone filed against OCP, the State, and various individuals associated with OCP and ODC.  *See Stone I*, 2019 WL 5058910, at *1–2.  That counterclaim alleged claims substantially similar to those in the Complaint here.[18]  *Compare* ECF No. 1, *with* ECF No. 16 *in Stone* ("Counterclaim").  In that same action, Plaintiffs moved to intervene under FRCP 24, which motion Judge Watson denied, finding that Plaintiffs identified no protectable interest of theirs in Stone's case, and that even if they had such an interest, Stone adequately represented those interests.  *See Stone*, 2020 WL 1643856, at *1–2 (D. Haw. Apr. 2, 2020) ("*Stone II*").

The Court applies federal common law in determining the preclusive effect of the judgment arising out of Judge Watson's ruling in *Stone I* because that judgment is a federal-court judgment.  *See Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 955 (9th Cir. 2017) ("'The preclusive effect of a federal-court judgment is determined by federal common law.'" (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008))).

---

[17]  For the sake of clarity, the Court will use the terms claim preclusion and issue preclusion in lieu of res judicata and collateral estoppel, respectively.

[18]  Stone asserted his counterclaim on behalf of himself and other non-parties, including Abing.  *See Stone I*, 2019 WL 5058910, at *2.

1.   Claim Preclusion

"Claim preclusion . . . applies where:  (1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits."  *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002) (citing *Blonder-Tongue Laboratories v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971)).

Plaintiffs were not parties in *Stone I*.  Nonetheless, the OCP Defendants cite *In re Schimmels*, 127 F.3d 875 (9th Cir. 1997), in support of their argument that "Plaintiffs' relationship with Stone satisfies the privity requirement in numerous ways."  ECF No. 62 at 4.  In *In re Schimmels*, the Ninth Circuit explained that under the doctrine of privity, "[o]ne who prosecutes or defends a suit in the name of another to establish and protect his own rights, or who assists in the prosecution or defense of an action in aid of some interest of his own is as much bound as he would be if he had been a party to the record."  *In re Schimmels*, 127 F.3d at 881 (quoting *Montana v. United States*, 440 U.S. 147, 154 (1979)) (emphasis and alterations omitted).  The Court cannot conclude based on the record before it that *Plaintiffs* assisted in *Stone's* efforts to prosecute a counterclaim against OCP in *Stone I*.  While Stone has provided certain assistance to Plaintiffs in *this* case, *see* ECF Nos. 58–60, the relevant inquiry for purposes of claim preclusion is limited to

32

whether Plaintiffs provided Stone with substantial assistance in Stone's case, not whether Stone is providing Plaintiffs with assistance in this case. *See In re Schimmels*, 127 F.3d at 881 (explaining that the party who assists in the *prior* action is bound by the judgment issued in that action).

The Ninth Circuit further recognized that "'privity' has been found where there is a 'substantial identity' between the party and nonparty; where the nonparty 'had a significant interest and participated in the prior action ; and where the interests of the nonparty and party are 'so closely aligned as to be virtually representative.'" *Id.* (some internal quotation marks and citations omitted). Here, there is no "substantial identity" between Stone and Plaintiffs because Plaintiffs are not "'so identified in interest with [Stone] that [they] represent[] precisely the same right in respect to the subject matter involved.'" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (quoting *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n.3 (9th Cir. 2002)). *Stone I* concerned OCP's enforcement of consumer protection statutes against Stone and Stone's related counterclaim that alleged a conspiracy involving lawyers associated with OCP and ODC (some, but not all of whom, are Defendants here); while Plaintiffs' action here deals with a larger conspiracy involving the Judge Defendants and efforts to deprive homeowners of their rights to the benefit

of Dummy Corporations.  Simply put, the conspiracy alleged here exceeds the scope of the conspiracy alleged in Stone's counterclaim.

Even assuming Plaintiffs had an interest in *Stone I* to the extent they opposed OCP's enforcement efforts against Stone, there is no indication Plaintiffs participated in that case; in fact, Plaintiffs' motion to intervene was denied.  *See generally Stone II*, 2020 WL 1643856; *see also Candler v. Palko*, No. 2:19-CV-0394-MCE-DMC-P, 2021 WL 859060, at *7 (E.D. Cal. Mar. 8, 2021) (explaining that there must be "some direct financial or proprietary link between [the nonparty's] interests and those of the [parties] to the prior action" and that the nonparty must have exercised "some kind of assumption of control of these interests" in order for the nonparty to be bound by the prior action's judgment under *In re Schimmels*).  Moreover, Plaintiffs' lack of participation in *Stone I* and the differing interests at stake in this case prevent the Court from finding that Stone was a virtual representative of Plaintiffs in *Stone I.  See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1053–54 (9th Cir. 2005) ("'A non-party can be bound by the litigation choices made by his virtual representative' only if certain criteria are met:  '[a] close relationship, substantial participation, and tactical maneuvering all support a finding of virtual representation; identity of interests and adequate representation are necessary to such a finding.'" (quoting *Irwin v. Mascott*, 370

F.3d 924, 930 (9th Cir. 2004))).  The Court therefore concludes that Plaintiffs'

claims are not barred by the doctrine of claim preclusion.

2.    Issue Preclusion

"The doctrine of issue preclusion prevents relitigation of all 'issues of fact or

law that were actually litigated and necessarily decided' in a prior proceeding."

*Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. Am.*

*Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979)).  "[I]ssue preclusion 'bars

successive litigation of an issue of fact or law actually litigated and resolved in a

valid court determination essential to [a] prior judgment, even if the issue recurs in

the context of a different claim.'"  *Int'l Bhd. of Teamsters*, 861 F.3d at 955

(quoting *Taylor*, 553 U.S. at 892) (some brackets in original).

"'In both the offensive and defensive use situations the party against whom .

. . [issue preclusion] is asserted has litigated and lost in an earlier action.'"  *Robi*,

838 F.2d at 322 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329

(1979)) (brackets in original).  "It is a violation of due process for a judgment to be

binding on a litigant who was not a party or a privy and therefore has never had an

opportunity to be heard."  *Parklane Hosiery Co.*, 439 U.S. at 327 n.7 (citing

*Blonder-Tongue Laboratories, Inc.*, 402 U.S. at 329; *Hansberry v. Lee*, 311 U.S.

32, 40 (1940)).

Setting aside the remaining requirements of issue preclusion, Plaintiffs' status as neither Stone's privies nor as parties in *Stone I* prevents the Court from giving preclusive effect to *Stone I* here.  In *Taylor*, the Supreme Court rejected the concept of "virtual representation" in the context of issue preclusion, but explained that there are six general exceptions to the requirement that the party against whom issue preclusion is sought was a party in the prior action:  (1) the party agreed to be bound by the prior determination; (2) the nonparty was in a "substantive legal relationship[]" with the party in the previous action, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor"; (3) "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit'"; (4) the nonparty "'assume[d] control' over the litigation in which that judgment was rendered'"; (5) "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy"; and (6) a statutory scheme may "'expressly foreclose[e] successive litigation by nonlitigants," such as bankruptcy, probate, quo warranto actions, or other suits that may be brought only on behalf of the public at large.  *Taylor*, 553 U.S. at 893–95, 898 (citations omitted) (some alterations in original).  The third and fifth exceptions warrant closer examination here.

36

Regarding the third exception, the Supreme Court explained: "Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." *Id.* at 894–95 (citations omitted). Even though Stone's counterclaim asserted injuries Stone's former clients (including Abing) suffered as a result of OCP's conduct, *see Stone I*, 2019 WL 5058910, at *2, Judge Watson ruled that Stone did not have standing to prosecute those claims on his former clients' behalves because there was not a sufficiently close relationship between Stone and his former clients. *See id.* at *5. Judge Watson further explained that "there is no alleged hindrance to [Stone's former clients] enforcing their own rights." *Id.* It would be inconsistent with Judge Watson's ruling for the Court to now conclude that Plaintiffs were adequately represented by Stone in *Stone I*.

Regarding the fifth exception, relitigation through a proxy, "[p]reclusion is . . . in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication." *Taylor*, 553 U.S. at 895 (citing *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 620 (1926); 18A Wright & Miller § 4454, at 433–34). Preclusion under this exception is "appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment." *Id.* (citing 18A Wright & Miller § 4449, at 335). While Plaintiffs certainly object to the discipline to which Stone

37

was subjected, at this stage, the Court cannot find that Plaintiffs bring this action as the representative of Stone, their former attorney, nor that Plaintiffs are acting as Stone's agent in this action.

The Court therefore concludes that neither claim preclusion nor issue preclusion bars Plaintiffs' Complaint or any portion thereof.  The Court's ruling, to be clear, is without prejudice.  If Plaintiffs put forth an amended complaint that cures the other defects identified in this Order, Defendants may raise either defense in a subsequent motion.

## F.    Section 1983 Claims (Counts II, III, IV, VI, and VII)

In Counts II, III, IV, VI, and VII, Plaintiffs assert constitutional violations pursuant to § 1983.  To prevail on their § 1983 claims, Plaintiffs must prove two essential elements:  "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citation omitted).

### 1.    Due Process and Denial of Access to Courts (Counts II and VI)

In Count II, Plaintiffs allege that Defendants are liable under § 1983 for a due process violation.  Specifically, Plaintiffs allege that Defendants "harass[ed] and suppress[ed] the foreclosure-defense bar . . . for the purpose of depriving the homeowners of access to the courts of this State."  ECF No. 1 ¶ 79.  Plaintiffs

assert a similar claim in Count VI, arguing that Defendants are liable under § 1983 for denying Plaintiffs access to the courts.  *Id.* ¶¶ 96–97.

There are two kinds of due process claims:  procedural due process claims and substantive due process claims.  "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (citation omitted) (brackets in original).  At its core, procedural due process requires notice and an opportunity to be heard.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

"The guarantee of substantive due process provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) (internal quotation marks and citation omitted).  "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest."  *Shanks*, 540 F.3d at 1087 (citing *Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)).

Thus, regardless of whether Plaintiffs intended to assert a procedural or a substantive due process claim, Plaintiffs must allege the deprivation of a

constitutionally protected property or liberty interest.  The Court understands Plaintiffs' allegations in Count II to be that Defendants deprived Plaintiffs of their right to access the courts based on a theory that they were deprived of counsel, which mirrors the denial of the right to access the courts claim in Count VI.  *See* ECF No. 1 ¶¶ 79, 96–97.  And while "'[t]he right of access to the courts is a fundamental right protected by the Constitution,'" *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014) (quoting *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998)), Plaintiffs cannot state a claim based on the alleged denial of their right to counsel in foreclosure actions.  As Judge Watson explained in *Stone II*, "in a *civil* case, such as foreclosure, there is no right to representation by a *lawyer*," let alone by Stone, a non-lawyer.  *Stone II*, 2020 WL 1643856, at *2 (citing *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985)). Because Plaintiffs do not have a right to counsel (or a non-lawyer), it cannot be the basis for a claim of denial of access to the courts.  Thus, having failed to identify a constitutionally protected property or liberty interest, Plaintiffs do not state a due process claim.

Counts II and VI are DISMISSED WITH PREJUDICE.  Amendment of these claims would be futile because Plaintiff's theory that they were deprived counsel cannot serve as a basis for a plausible procedural due process or substantive due process claim or a claim of denial of access to the courts.

2.    <u>Threatening Homeowners (Count III)</u>

In Count III, Plaintiffs assert a claim for "Threatening Homeowners" under § 1983.  Specifically, Plaintiffs allege that Defendants "directly harass[ed] and threaten[ed] . . . [Plaintiffs] . . . for the purpose of depriving them of access to the courts of this State."  ECF No. 1 ¶ 83.  The Ninth Circuit has ruled that "'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'"  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)) (alterations and other citations omitted).

The Ninth Circuit has further held that a plaintiff who alleged he was "'threatened with bodily harm' by the defendants 'to convince him to refrain from pursuing legal redress' for beatings" he sustained by prison guards did not state a claim under § 1983.  *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987); *see also Berman v. Dep't of Police & City of Vacaville*, Case No. 18-cv-03108-MMC, 2019 WL 1283934, at *3 n.7 (N.D. Cal. Mar. 20, 2019) ("[The plaintiff]'s § 1983 claim fails for the additional reason that a threat alone, even if to commit an act that would, if performed, violate the Constitution, is not actionable." (citing *Gaut*, 810 F.2d at 925)).  Thus, Count III fails to state a claim because neither harassment nor threats are bases for a § 1983 claim.

41

Count III is DISMISSED WITH PREJUDICE.  Amendment would be futile because neither the Ninth Circuit nor the Supreme Court has recognized a remedy under § 1983 for threats or harassment.

3.      Equal Protection (Count IV)

In Count IV, Plaintiffs assert an equal protection claim under § 1983. Despite acknowledging that they may not have a constitutional right to an attorney in all cases, Plaintiffs maintain that they have such a right in foreclosure proceedings if the Dummy Corporations also have such a right.  *See* ECF No. 1 ¶ 89.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (some internal quotation marks omitted).  Equal protection claims may be class-based or based on a class-of-one.  *Compare Lazy Y Ranch Ltd v. Behrens*, 546 F.3d 580, 589 (9th Cir. 2008) (holding that a class-based equal protection arises when the "law is applied in a discriminatory manner or imposes different burdens on different classes of people" (internal quotation marks and citation omitted)), *with Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)

(holding that an equal protection claim may be "brought by a 'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" (citations omitted)).  Plaintiffs' equal protection claim appears to be class-based[19] as Plaintiffs identify two classes of Plaintiffs that they argue Defendants treat differently in legal proceedings:  homeowners and Dummy Corporations.  *See* ECF No. 1 ¶ 89.

"In analyzing Equal Protection claims, [the] 'first step . . . is to identify the state's classification of groups.'"  *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (quoting *Country Classic Dairies, Inc. v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)) (second alteration in original).  "To accomplish this, a plaintiff can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (citation omitted).  After identifying a "classified group," the Court must look for a "control group composed of individuals who are

---

[19]  Unless a classification implicates a suspect class or quasi-suspect class or infringes on a fundamental right, a legal classification is valid so long as it satisfies rational basis review, under which the court must examine whether "'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 814–15 (9th Cir. 2016) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  Suspect classes include race, religion, and national origin, and quasi-suspect classes include gender and illegitimacy.  *See Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001) (citations omitted).

similarly situated to those in the classified group in respects that are relevant to the state's challenged policy," and "[i]f the two groups are similarly situated, [the Court] determine[s] the appropriate level of scrutiny and then appl[ies] it." *Gallinger*, 898 F.3d at 1016 (citing *Freeman*, 68 F.3d at 1187; *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017)).

The Court concludes that Plaintiffs have failed to satisfy the first step of a class-based equal protection claim.  Even if homeowners constitute a class and Dummy Corporations constitute a control group, Plaintiffs have not alleged any facts showing that Defendants applied any law in a different manner with respect to these two groups.  Unlike individuals, corporations cannot appear in state or federal court in Hawaiʻi as pro se litigants.  *See* LR 81.1(b) ("Entities other than individuals, including but not limited to corporations, partnerships, limited liability partnerships or corporations, trusts, community associations, and unions, must be represented by an attorney."); *Oahu Plumbing & Sheet Metal, Ltd. v. Kona Constr., Inc.*, 60 Haw. 372, 374, 590 P.2d 570, 572 (1979) ("The prevailing rule is that a corporation cannot appear and represent itself either in proper person or by its officers, but can do so only by an attorney admitted to practice law." (citations omitted)).  That said, the *requirement* that corporations appear in court through counsel is not equivalent to a *right* to counsel.  Plaintiffs have not alleged that Defendants engaged in any affirmative efforts to provide Dummy Corporations

44

with counsel nor is there any law providing for the appointment of counsel to plaintiffs in foreclosure actions or to corporations generally.  Plaintiffs therefore fail to state an equal protection claim.

Because it is theoretically possible that Plaintiffs could plead facts that give rise to an equal protection claim, Count IV is DISMISSED WITH LEAVE TO AMEND so that Plaintiffs can cure the defects identified in this Order.

### 4.    Failure to Intervene (Count VII)

In Count VII, Plaintiffs assert that Defendants violated § 1983 when they failed to intervene in order to prevent each other from violating their constitutional rights.  ECF No. 1 ¶ 99.  "[T]he general rule is that [a] state is not liable for its omissions[.]"  *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).  "As a corollary, the Fourteenth Amendment typically 'does not impose a duty on the state to protect individuals from third parties.'"  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (quoting *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007)) (brackets omitted).  There are two recognized exceptions to this rule:  (1) when there is a "special relationship" between the plaintiff and the state; and (2) when the state affirmatively places the plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger."  *Id.* at 971–72 (citing *DeShaney*, 489 U.S. at 198–202; *L.W. v. Grubbs*, 92 F.3d 894,

900 (9th Cir. 1996)) (internal quotation marks omitted).  For example, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen" when the officers have a "realistic opportunity to intercede."  *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)) (internal quotation marks omitted).

Here, Plaintiffs have alleged no facts showing that there was a special relationship between themselves and any of Defendants.  Nor have Plaintiffs alleged facts showing that the State placed Plaintiffs in danger by acting with deliberate indifference to a known or obvious danger.  Count VII therefore fails to state a claim because Defendants cannot be liable for its omissions in the absence of an affirmative duty to act.

Because it is theoretically possible that Plaintiffs could plead facts giving rise to a duty to intervene and facts showing a breach of that duty, Count VII is DISMISSED WITH LEAVE TO AMEND.

## G.     Plaintiffs' 42 U.S.C. § 1985 Claim (Count V)

In Count V, Plaintiffs allege that the various defendants conspired to deter Plaintiffs by intimidation and threat from testifying freely, fully, and truthfully and that Defendants conspired to deny Plaintiffs the equal protection of law in state

court in violation of 42 U.S.C. §§ 1985(2) and (3).  Sub-sections (2) and (3) of

§ 1985 state:

> **(2) Obstructing justice; intimidating party, witness, or juror**
> . . . [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;
>
> **(3) Depriving persons of rights or privileges**
> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2)–(3).

The Court need not reach the merits of Plaintiffs' § 1985 claim because

qualified immunity and a separate defense raised by the OCP Defendants — the

intracorporate-conspiracy doctrine — together prevent Plaintiffs from pleading a

viable claim under § 1985 against Defendants.  ECF No. 14-1 at 32–33.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (other citation omitted). "The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (other citation omitted). "'A public official is not entitled to qualified immunity when the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right.'" *Jeffers*, 267 F.3d at 910 (quoting *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)) (alterations in original).[20] Although there need not be a case "directly on point" establishing the right in question, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

---

[20] The Court has the discretion to choose which step of *Saucier*'s two-step sequence for resolving government officials' qualified immunity claims is first addressed, and opts to address the second step at the outset, as it is dispositive. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009) ("[J]udges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.).

"Under . . . the intracorporate-conspiracy doctrine[,] an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1867 (2017) (citing *Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752, 769–771 (1984)).  The Supreme Court "has not given its approval to this doctrine in the specific context of § 1985(3)."  *Id.* at ___, 137 S. Ct. at 1868 (citing *Great Am. Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366, 372 n.11 (1979)). "Most, but not all, circuit courts have applied the doctrine to bar claims against public entities.  The Ninth Circuit has noted the split but declined to address the issue." *Wagner v. County of Plumas*, No. 2:18-cv-03105-KJM-DB, 2020 WL 820241, at *6 (E.D. Cal. Feb. 19, 2020) (citing *Portman v. City of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993)) (other citation omitted).  And the Ninth Circuit in *Portman* declined to decide whether the intracorporate-conspiracy doctrine applied to § 1985(2) claims.  *See Portman*, 995 F.2d at 910.

In *Ziglar*, the Court concluded that federal officials were entitled to qualified immunity because the fact that "the courts are divided as to whether a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established." *Ziglar*, 582 U.S. ___, 137 S. Ct. at 1868.  Thus, so long as each Defendant here is an agent of the same entity, *i.e.*, the State, they, too, are entitled to qualified immunity as to

49

Plaintiffs' § 1985(3) claim.  And because the law is similarly unsettled with respect to the applicability of the intracorporate-conspiracy doctrine to § 1985(2) claims, *see Portman*, 995 F.2d at 910, the same holds true for Plaintiffs' § 1985(2) claim.

Each Defendant here is an agent of the same entity — the State of Hawai'i. The OCP Defendants are agents of the State as OCP is a unit of the State Department of Commerce and Consumer Affairs.  *See* HRS § 487-2 (OCP's enabling statute); *see also Stone I*, 2019 WL 5058910, at *6 (treating OCP as an "arm of the State of Hawai'i"); *Stone*, 2021 WL 67314 (D. Haw. Jan. 7, 2021) (granting the State's motion for entry of final judgment).  The Disciplinary Defendants are each agents of the State of Hawai'i insofar as the Disciplinary Board is appointed by the Supreme Court of Hawai'i, and the Disciplinary Board in turn has the authority to hire the staff that comprise ODC, including a Chief Disciplinary Counsel and his or her deputies and staff.  *See* RSCH Rule 2.4(a), (e)(2).  Finally, the Judge Defendants are agents of the judiciary of the State of Hawai'i.  *See* HRS § 601-1 ("There shall be a branch of government, styled the judiciary."); *see also Shorb v. Josephine Cnty. Cir. Ct.*, No. 1:17-cv-00449-AA, 2017 WL 4553410, at *3 (D. Or. Oct. 11, 2017) (explaining that a state court is a state entity entitled to sovereign immunity).

As each Defendant is an agent of the State of Hawai'i, each is entitled to qualified immunity in their individual capacities for claims brought under §

1985(2) or (3).  For the reasons stated above, it is not "sufficiently clear that a reasonable official would understand" that he or she was violating the rights guaranteed by these statutes.  Count V is therefore DISMISSED WITH PREJUDICE.  Amendment would be futile because Defendants are entitled to qualified immunity on this claim as state agents.

## H.   Plaintiffs' 42 U.S.C. § 1986 Claim (Count XI)

In Count XI, Plaintiffs assert a claim for action for neglect to prevent a harm under 42 U.S.C. § 1986.[21]  However, a claim under § 1986 "depends on the existence of a claim under § 1985." *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983) (citing *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 452 (7th Cir. 1980)). As Defendants are entitled to qualified immunity on Plaintiffs' § 1985 claim, they are further entitled to qualified immunity as to Plaintiffs' § 1986 claim.  *See Nguyen v. Yolo Cnty. Dist. Att'y's Off.*, No. 2:21-cv-00239-TLN-KJN PS, 2021

---

[21]  Section 1986 states:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action[.]

42 U.S.C. § 1986.

WL 929558, at *3 (E.D. Cal. Mar. 11, 2021) ("[D]ismissal of Section 1985

conspiracy claims ipso facto requires dismissal of [any related] 1986 claim[.]"

(citing *Wagar v. Hasenkrug*, 486 F. Supp. 47, 50 (D. Mont. 1980))), *report and

recommendation adopted by* No. 2:21-cv-00239-TLN-KJN, 2021 WL 1404754

(E.D. Cal. Apr. 14, 2021).

     Count XI is therefore DISMISSED WITH PREJUDICE.

## I.    Statute of Limitations

     The OCP Defendants argue that each of Plaintiffs' claims are barred by a

two-year statute of limitations, with the exception of Plaintiffs' 42 U.S.C. § 1986

claim, which outlines a one-year statute of limitations.  ECF No. 14-1 at 33.

     The Court agrees with the OCP Defendants' calculation of the applicable

limitations periods.  Plaintiffs' tort claims against Defendants in their individual

capacities is governed by the two-year statute of limitations for tort actions in HRS

§ 657-7.  Plaintiffs' tort claims against Defendants in their official capacities

(which the Court construes as claims against the State, *see supra* Section III.A.) are

governed by the two-year statute of limitations in the State Tort Liability Act.

HRS § 662-4.[22]  Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985 are also

---

[22]  The OCP Defendants also cite HRS § 661-5 in support of their argument that
there is a two-year statute of limitations for claims against the State.  ECF No. 14-1
at 33.  Section 661-5, however, is inapplicable because it relates to actions brought
under HRS chapter 661, which relates to claims against the State based on a state

(continued . . . )

subject to Hawaii's two-year statute of limitations for personal injury actions.  *See*

*Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711–12 (9th Cir. 1993)

(explaining that the state personal injury statute of limitations governs actions

under 42 U.S.C. §§ 1981, 1983 and 1985).  And finally, 42 U.S.C. § 1986 provides

that "no action under the provisions of this section shall be sustained which is not

commenced within one year after the cause of action has accrued."  42. U.S.C. §

1986.

For the reasons detailed in this Order, Plaintiffs have not yet stated a viable

claim against any Defendants.  Should Plaintiffs choose to file an amended

complaint, Plaintiffs will be unable to state a viable claim if the claim accrued prior

to February 16, 2019 (two years prior to the date of the Complaint).  For example,

if Plaintiffs attempt to amend their equal protection claim, the claim must have

accrued on or after February 16, 2019.

**J.    Plaintiffs' Remaining State Law Claims**

Plaintiffs invoke federal question and supplemental jurisdiction for their

federal and state claims.  Aside from Plaintiffs' federal claims and their malicious

---

(. . . continued)

statute; an executive department's rule; article I, section 20, of the Hawaiʻi State
Constitution; a contract with the state; claims referred to the court by the
legislature; and any counterclaim brought by the State in response to such a claim.
*See* HRS § 661-1.

prosecution claim, which claims the Court has dismissed, *see supra* Sections III.B., C.1, F., G., H., Plaintiffs assert state law claims for abuse of power or malfeasance (Count I), civil conspiracy (Count IX), and intentional infliction of emotional distress (Count X), each of which the Court has dismissed as to each Defendant in their official capacities. *See supra* Section III.B.2. Because the Court's jurisdiction over these remaining state law claims against Defendants in their individual capacities (except for claims against the Judge Defendants, which are all dismissed with prejudice, *see supra* Section III.C.3) is supplemental, *see* 28 U.S.C. § 1367(a), and Plaintiffs have yet to present a viable federal claim, the Court declines to address the remaining state law claims at this time.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART the OCP Defendants' Motion to Dismiss and the Disciplinary Defendants and Judge Defendants' Substantive Joinder and Motion to Dismiss as follows:

All claims against the Judge Defendants are DISMISSED WITH PREJUDICE.

Count I (Abuse of Power or Malfeasance) is DISMISSED WITHOUT LEAVE TO AMEND as to Defendants in their official capacities.

COUNT II (42 U.S.C. § 1983:  Due Process) is DISMISSED WITH PREJUDICE.

Count III (42 U.S.C. § 1983:  Threatening Homeowners) is DISMISSED WITH PREJUDICE.

Count IV (42 U.S.C. § 1983:  Equal Protection) is DISMISSED WITH PREJUDICE as to all Defendants[23] in their official capacities to the extent it seeks money damages and is otherwise DISMISSED WITH LEAVE TO AMEND.

Count V (42 U.S.C. § 1985(2) and (3):  Conspiracy to Deprive Constitutional Rights) is DISMISSED WITH PREJUDICE.

Count VI (42 U.S.C. § 1983:  Denial of Access to Courts) is DISMISSED WITH PREJUDICE.

Count VII (42 U.S.C. § 1983:  Failure to Intervene) is DISMISSED WITH PREJUDICE as to all Defendants in their official capacities to the extent it seeks money damages and otherwise DISMISSED WITH LEAVE TO AMEND.

Count VIII (Malicious Prosecution) is DISMISSED WITH PREJUDICE.

Count IX (Civil Conspiracy) is DISMISSED WITHOUT LEAVE TO AMEND as to Defendants in their official capacities.

---

[23] Although, as explained above, the claims against the Judge Defendants cannot survive, the Court alternatively dismisses Counts IV and VII against the Judge Defendants as indicated herein.

Count X (IIED) is DISMISSED WITHOUT LEAVE TO AMEND as to Defendants in their official capacities.

Count XI (42 U.S.C. §1986:  Action for Neglect to Prevent a Harm) is DISMISSED WITH PREJUDICE.

In sum, the Court precludes Plaintiffs from amending the Complaint to rehabilitate Counts II, III, V, VI, VIII, and XI.  Counts I, IX, and X may not be brought in federal court against the Judge Defendants nor against any of the other Defendants in their official capacities and the Court declines to address at this time the viability of those claims against the non-Judge Defendants in their personal capacities.  Plaintiffs may amend Counts IV and VII but they may not:  (1) assert those claims against the Judge Defendants;  (2) seek money damages or other retrospective relief for those counts; or (3) assert any claim in violation of the statute of limitations.

Plaintiffs may file an amended complaint by September 30, 2021 curing the defects identified in this Order.  Plaintiff may not add parties or claims without obtaining leave of court.  Failure to comply with this Order may result in the dismissal of this action.

//

//

//

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, August 30, 2021.



Jill A. Otake
United States District Judge

Civil No. 21-00095 JAO-WRP, *Abing v. Evers*, ORDER GRANTING IN PART AND DENYING IN PART (1) MOTION TO DISMISS PLAINTIFFS' COMPLAINT FILED ON FEBRUARY 16, 2021 [ECF NO. 14]; AND (2) DEFENDANTS BRUCE B. KIM, BRADLEY R. TAMM, RYAN SUMMERS LITTLE, REBECCA SALWIN, YVONNE R. SHINMURA, CHARLENE M. NORRIS, ROY F. HUGHES, GAYLE J. LAU, JEFFREY P. MILLER, PHILIP H. LOWENTHAL, CLIFFORD NAKEA, THE HONORABLE BERT I. AYABE AND THE HONORABLE JEANNETTE H. CASTAGNETTI'S SUBSTANTIVE JOINDER AND MOTION TO DISMISS WITH PREJUDICE COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES [ECF NO. 46]